**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.W.-1 and J.W.**

**No. 20-0819** (Wood County 19-JA-211 and 19-JA-212)

**MEMORANDUM DECISION**

Petitioner Custodian/Guardian W.W. (also the grandmother of the children), by counsel F. John Oshoway, appeals the Circuit Court of Wood County's September 2, 2020, order terminating her custodial and guardianship rights to B.W.-1 and J.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix record. The guardian ad litem, Matthew E. DeVore, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that she failed to protect B.W.-1 from sexual abuse and that there was no reasonable likelihood that she could substantially correct the conditions of neglect or abuse in the near future.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2019, the DHHR filed a child abuse and neglect petition alleging that twelve-year-old B.W.-1 and nine-year-old J.W. were in the legal guardianship of petitioner and B.W.-2 ("grandfather" herein). The DHHR alleged that, per B.W.-1's disclosures during a forensic interview, the grandfather had sexually abused her multiple times over the course of two years. The DHHR further alleged that petitioner was aware of the allegations of sexual abuse and had

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as the child and the grandfather share the same initials, we refer to them as B.W.-1 and B.W.-2, respectively, throughout this memorandum decision.

1

failed to protect B.W.-1 from further abuse. According to the DHHR, petitioner admitted that she was aware of B.W.-1's allegations against the grandfather. Petitioner allegedly confronted the grandfather, and he denied abusing B.W.-1. The DHHR alleged that the grandfather continued to reside in the home with the children. Petitioner waived her preliminary hearing.

The circuit court held multiple adjudicatory hearings, beginning in January of 2020, and heard from several witnesses, including petitioner, the grandfather, and several DHHR workers. During their testimony, petitioner and the grandfather asserted that B.W.-1 falsified the allegations at the behest of her biological mother. The circuit court admitted and viewed the forensic interviews of B.W.-1 and J.W. Ultimately, the court issued an order finding that B.W.-1 and J.W. were abused and neglected children in July of 2020. In support, the circuit court found that B.W.-1's recorded forensic interview "was very specific, credible, and convincing." The circuit court further found that petitioner "was told [that the grandfather] sexually abused [B.W.-1]." However, petitioner "did not make [the grandfather] leave the residence" and "allowed him to continue to reside in the same house as the children for at least two weeks following the disclosure." The circuit court noted that "[w]hen asked if [petitioner] believed the sexual abuse happened, it was still unclear to the [DHHR] worker who [petitioner] believed." The circuit court concluded that petitioner "was not appropriately protective of the children having been made aware [that B.W.-1] was being sexually abused in the home" and adjudicated petitioner as an abusing parent.[2]

In August of 2020, the circuit court held a final dispositional hearing. Petitioner orally moved for a post-adjudicatory improvement period. The circuit court reiterated that B.W.-1's allegations were "credible and appeared to have no signs of coaching" and that petitioner "does not believe the child and did not protect the child." The circuit court further found that "[a]n improvement period would provide no use or benefit and is not in the children's best interest as [petitioner had] made no admission" of abuse or neglect of the children. The circuit court concluded that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination of petitioner's custodial and guardianship rights was necessary for the welfare of the children. Accordingly, the circuit court terminated petitioner's custodial and guardianship rights by its September 2, 2020, order.[3]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[2]Pursuant to West Virginia Code § 49-1-201, an "abusing parent" is defined as "a parent, *guardian, or other custodian*, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." (Emphasis added.)

[3]The children's biological parents have had their parental rights terminated. The grandfather, a co-custodian and guardian, also had his custodial and guardianship rights terminated below. According to the parties, the permanency plan for B.W.-1 is adoption in her current placement. Due to J.W.'s behavioral issues, an adoptive placement has yet to be found, and the parties believe residential treatment is necessary before permanent placement may be found.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that she failed to protect B.W.-1 from sexual abuse.[4] However, we find no error in the circuit court's findings of fact or conclusions of law in this regard.

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). "[T]he clear and convincing standard is 'intermediate, being more than a

---

[4]In support of her arguments, petitioner provides multiple references to her testimony at the adjudicatory hearing. However, petitioner failed to provide that transcript, or any other transcript, that contains that testimony. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . [and] must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that "[b]riefs with arguments that . . . do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Because petitioner's factual assertions in regard to her testimony are not supported by the record, we decline to consider them on appeal.

mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further,

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Importantly, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

Here, the circuit court found that petitioner was aware that B.W.-1 had been sexually abused by the grandfather based upon B.W.-1's "very specific, credible, and convincing" forensic interview. According to the circuit court's findings, petitioner was told that the grandfather was sexually abusing B.W.-1, but she continued to allow the grandfather to live in the home with the children. Further, the circuit court found that it was unclear whether petitioner believed the child's disclosures. This is clear and convincing evidence that supports the circuit court's ultimate conclusion that petitioner failed to appropriately protect the children in the face of the grandfather's sexual abuse of B.W.-1. Petitioner offers no evidence in contradiction to these findings and, upon a careful review of the record provided, we find no error in the circuit court's findings of fact or conclusions of law. Therefore, petitioner is entitled to no relief.

Petitioner also argues that the circuit court erred in finding that there was no reasonable likelihood that she could substantially correct the conditions of neglect or abuse because it failed to permit her an opportunity to improve and, therefore, could not say definitively that she could not correct the conditions of neglect or abuse. She argues that the only evidence against her "amounts to a single report of inappropriate conduct by her husband [the grandfather] against the child." Petitioner asserts that while "[h]er reaction to the report [of sexual abuse] may have been less decisive than we would like, it is nonetheless undisputed that she did take action." Petitioner's allegations lack support in the record.

Here, the record establishes that petitioner did not believe B.W.-1's allegations of sexual abuse and presented a defense that the child was lying for her own gain. The record contains no evidence that petitioner took any action to protect B.W.-1 from the grandfather, and this inaction serves to further underscore petitioner's disbelief in the child's allegations. Critically, we have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator

of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). In response to petitioner's argument that she should have been granted an improvement period, her denial of the sexual abuse rendered such an opportunity futile. It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Further, "if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). Based on petitioner's failure to acknowledge the conditions of abuse and neglect, we find the circuit court did not err in denying her an improvement period.

Next, we find that the circuit court did not err in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. Pursuant to West Virginia Code § 49-4-604(d), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." As explained above, petitioner's failure to acknowledge the basic existence of the problem is a barrier to treatment. The record is devoid of petitioner's acknowledgment of her parental shortcomings, and, therefore, there is no reasonable likelihood that she could correct the same.

Finally,

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Finding no error in the circuit court's findings of fact from the record presented, we conclude that the circuit court correctly terminated petitioner's custodial and guardianship rights. Petitioner is entitled to no relief on appeal.

Lastly, because the proceedings regarding permanency for J.W. are ongoing, this Court reminds the circuit court of its duty to establish permanency for this child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 2, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 20, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton